IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:22-cv-00465-RAH |
| WESTOVER PLANTING COMPANY, et al., | ) ) ) | [WO] |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute concerning the total loss of a cotton picker due to a fire. National Trust Insurance Company (NTIC) brings this declaratory judgment action claiming the cotton picker was only insured for $10,000 under the coverage provision for borrowed/rented equipment, while the Defendants, Westover Planting Company (the insured) and Flint Equipment Company, Inc. (the owner), claim there was coverage up to $500,000 under the policy provision covering individually described and specified equipment on the policy declaration and schedule. Westover has counterclaimed for breach of contract and declaratory judgment due to NTIC's refusal to pay under the $500,000 coverage provision. Discovery now at an end, all parties have moved for summary judgment on all claims. With each motion having been fully briefed and thus ripe for decision, NTIC's motion is due to be DENIED and the Defendants' motions due to be GRANTED.

## JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 2201 and 28 U.S.C. § 1332 as to NTIC's declaratory judgment action and Westover's counterclaim. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law" based on the materials in the record. Fed. R. Civ. P. 56(a), (c). The court must view the evidence and make all reasonable inferences drawn therefrom "in the light most favorable to the nonmovant." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Applicable substantive law identifies those facts that are material. *Id.* An issue is not genuine if it is unsupported by evidence or created by evidence that is "merely colorable, or is not significantly probative[.]" *Id.* at 249 (citations omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy its burden of proving the absence of a genuine dispute by citing to materials in the record or by showing the nonmovant cannot produce evidence to establish an element essential to their case to which it has the burden of proof. Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 322–23. If the movant meets this burden, the burden shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial" with evidence beyond the pleadings. *Celotex Corp.*, 477 U.S. at 324. Generally, a "mere existence

of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

## BACKGROUND

The factual background is simple:

Westover Planting Company grows and farms cotton.  On September 4, 2020, Westover purchased a 2016 John Deere cotton picker CP690.  Westover insured the cotton picker for its full value on its NTIC-issued insurance policy and paid the appropriate premium, and as such, the cotton picker was individually described on the policy declaration and schedule as an item of insured equipment by explicit reference to its year (2016), make (John Deere), model (CP690), serial number (1NOC690PLG4060050), and insured value ($500,000).  (Doc. 36-11 at 13.)[1]

The cotton picker broke down in October of the following year.  Westover contacted Flint Equipment, which removed the engine and took it back to Flint's facility in Georgia, leaving the cotton picker engineless in one of Westover's cotton fields.

So that it could continue with its cotton operations during the 2021 harvest season, Westover decided to purchase a 2018 John Deere cotton picker from Flint and to trade in the non-working 2016 model. (Doc. 36-1 at 29:17–30:21.)  To effectuate the transaction, Westover signed a purchase order and loan contract/security agreement. (*Id.* at 42:11–43:14; Doc. 33-4 at 2–8; Doc. 33-5 at 2–3.)  Thus, as of October 28, 2021, Westover no longer owned the cotton picker (Doc. 33-2 at 18:12–22; 23:15–24:9), although the engineless cotton picker remained in Westover's cotton field. (Doc. 36-1 at 47:12–22).

Shortly after the purchase and trade-in transaction and after the cotton picker was repaired, Westover asked Flint if Westover could use the 2016 cotton picker to

[1] For the sake of clarity, documents will be referred to by their page or paragraph numbers based on their CM/ECF document page numbers.

3

help Westover catch up on lost harvest time. (Doc. 36-1 at 55:6–20; 57:2–58:12.) This was agreeable to Flint, provided Westover insured the cotton picker before using it. (Doc. 36-1 at 121:5–9; Doc. 33-2 at 37:12–22.)

Westover did not directly contact NTIC about the change in ownership or borrowed status of the cotton picker. Instead, Westover contacted its insurance agent to inquire about insurance coverage on the cotton picker. (Doc. 36-1 at 59:2–60:12.) When asked whether the now-borrowed (and formerly-owned) cotton picker was still covered under Westover's insurance policy with NTIC, Westover's agent confirmed that it was still covered since the cotton picker was still individually scheduled on the list of insured equipment on the Declarations on the policy. (*Id*.)

The cotton picker ultimately was repaired and Westover began using it on November 17, 2021. The next day, on November 18, the cotton picker caught fire and was destroyed.

Since the cotton picker was still individually listed on the NTIC insurance policy and schedule, Westover notified its insurance agent of the loss. NTIC adjusted the claim and paid for pollutant clean-up and debris removal. (Doc. 36-8 at 4.) NTIC also paid Westover for the cotton picker under the borrowed/rented equipment coverage provision, which contained a $10,000 coverage limitation. (*Id*.) NTIC however refused to pay under the coverage provision for individually scheduled equipment. Westover disputed NTIC's position, claiming that it was entitled to the full value of the cotton picker, up to the policy's coverage limits of $500,000 for this item listed equipment.

NTIC then filed this declaratory judgment action against Westover and Flint seeking a declaration that it was only obligated to pay $10,000 under the policy for the loss. Westover counterclaimed for breach of contract and declaratory judgment.

## DISCUSSION

The primary issue here is whether the 2016 cotton picker was covered under the scheduled property provision of the insurance policy (and thereby subject to coverage limits of $500,000), or the unscheduled blanket provision for borrowed/rented equipment (and thereby subject to coverage limits of $10,000). Resolution of that issue turns on the plain language of the insurance policy.[2]

### A. The Declaratory Judgment Claim

As in any insurance coverage dispute, the inquiry first begins with the language of the insurance policy. "[G]eneral rules of contract law govern an insurance contract."[3] *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). When determining how to construe provisions of an insurance policy, the court must give words used in the policy their everyday, plain meaning and "interpret[] them as a reasonable person in the insured's position would have understood them." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009) (internal citations omitted). "Where there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy . . . by making a new contract for the parties[.]" *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002).

If the terms of an insurance contract are reasonably certain, then the terms are unambiguous as a matter of law and the "rule of construction in favor of the insured does not apply." *Brown¸* 26 So. 2d at 1169. Whether a provision of an insurance

---

[2] NTIC initially made an insurable interest argument against application of the scheduled equipment provision. (Doc. 1 at ¶¶ 57–58.) NTIC no longer advances that argument, as it now admits that Westover had an insurable interest in the cotton picker due to its status as a borrower. As the issue is not dispositive here, there will no further discussion of it.

[3] The Court will apply Alabama law, as no party argues otherwise and the doctrine of *lex loci contractus* appears to make Alabama law applicable.

policy is ambiguous is a question of law for the court to decide. *Herrera*, 912 So. 2d at 1143 (citing *Turvin v. Alfa Mut. Gen. Ins. Co.*, 774 So. 2d 597, 599 (Ala. Civ. App. 2000)). If an insurance policy contains ambiguous language, all ambiguities "must be resolved against the insured." *Id.* (citing *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001).

Resolution of the parties' dispute involves **Section I, Coverage E(A)(1)(i)** (the borrowed/rented equipment provision) and **Section I, Coverage E(A)(1)(j)** (the scheduled equipment provision) of the NTIC insurance policy. NTIC argues that the borrowed/rented property provision applies because the cotton picker was borrowed at the time of loss. Westover and Flint argue the scheduled equipment provision applies because the cotton picker was individually described and scheduled on the Declarations of the policy. To begin, the Declarations and Farm Personal Property Schedule provide as follows:

| | | | | | Policy Number | | |
|---|---|---|---|---|---|---|---|
| | | | | | FNC100056189-02 | | |

**FARM PERSONAL PROPERTY SCHEDULE**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Named Insured | Westover Planting Company | | | | Effective Date: 04/01/2021 | | |
| | | | | | 12:01 A.M., Standard Time | | |
| Agent Name | THOMPSON INSURANCE INC/AG | | | | Agent No. 1705001 | | |

SEPARATE DEDUCTIBLES MAY APPLY TO CERTAIN CAUSES OF LOSS SUCH AS: HURRICANE, WINDSTORM, HAIL, OR EARTHQUAKE.

| COVERAGE: E | PROPERTY OTHER THAN LIVESTOCK OR MACHINERY |
|---|---|

| DESCRIPTION | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOC NO. | ITEM NO. | YEAR | MAKE | | MODEL | | SERIAL NO. |
| 001 | 054 | 2016 | JOHN DEERE | | CP690 | | 1N0C690PLG4060050 |

| LIMIT OF INSURANCE | VALUATION | FOREIGN OBJECTS | COVERED CAUSES OF LOSS | DEDUCTIBLE WIND OR HAIL | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|---|---|
| $500,000 | ACV | N | Special | | $10,000 | ██████ |

(Doc. 36-11 at 5, 13.)

And particular to the coverage dispute, the two provisions at issue state as follows:

## FARM PROPERTY – FARM PERSONAL PROPERTY COVERAGE FORM

**SECTION I – COVERAGES**

**COVERAGE E – SCHEDULED FARM PERSONAL PROPERTY**

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below, caused by or resulting from and Covered Cause of Loss.

   1. **Covered Property**
All of the following are Covered Property under Coverage E of this Coverage Form, provided a Limit of Insurance is shown in the Declarations for the specific type of property:
\*\*\*

   **i.** Farm machinery, vehicles and equipment that you ***borrow or rent***, whether or not under a written contract, except while on the premises of its owner.

   The borrowed or rented property must be:
    **1.** Usual or incidental to farming operations;
    **2.** In your care, custody, or control; and
    **3.** Property in which you have no interest as owner or lienholder.
   \*\*\*

   **j.** Farm machinery, vehicles and equipment which are ***individually described and specifically covered in the Declarations***, while on or away from the "insured location," except while in the custody of a common or contract carrier.

(Doc. 33-15 at 2–3 (emphasis added).)

As it concerns borrowed/rented equipment, under **Section I, Coverage E(A)(1)(i)**, coverage is extended by an additional $10,000 above that, if any, listed in the Declarations on the policy.

7

**SECTION II – COVERAGE EXTENSIONS**

**Thirty-Day Additional Limit on Borrowed or Rented Farm Machinery, Vehicles, Equipment.**

This Coverage Extension applies to Coverage E.

1. The Limit of Insurance, if any, shown in the Declarations for Farm Machinery, Vehicles, Equipment Borrowed Or Rented With or Without a Written Contract will be increased by $10,000 which will apply in any one occurrence to loss of or damage only to such items, as described in Parage A.1.i. in Section I, that you *borrow or rent* after the beginning of the policy period. However, if a higher additional Limit of insurance is specified in the Declarations, the higher Limit will apply.

2. Insurance under this Coverage Extension will end:
   a. Thirty days after the Covered Property is borrowed or rented; or
   whenever this policy expires, which comes first.

3. If any property covered under this Coverage Extension remains in your possession for a period of more than thirty days, you must report value for it, and additional premium will be due and payable from the thirty-first day after you took possession.

(Doc. 33-15 at 8 (emphasis added).)  Since the Declaration contains no limits of insurance for borrowed/rented equipment (*see* Doc. 36-11 at 2), the $10,000 coverage extension essentially serves as a $10,000 limit for unscheduled blanket coverage over any equipment that was borrowed or rented for thirty days or less.

Notably, while the borrowed/rented equipment provision and its coverage extension are expressly limited to and applicable to borrowed/rented equipment, the scheduled equipment provision does not distinguish between owned or borrowed

8

equipment, nor does it limit its application to owned equipment only. That provision's only requirement is that the equipment be "individually described and specifically covered in the Declarations" on the policy.

Here, the 2016 cotton picker was "individually described and specifically covered in the Declarations" on the policy. Certainly, at the time it was added to the policy and when it was owned by Westover, the scheduled equipment provision applied—and the borrowed/rented equipment provision did not—and provided up to $500,000 coverage for that item of equipment. No party, including NTIC, disputes that. It remained "individually described and specifically covered in the Declarations" on the policy when it became borrowed equipment and later when it was destroyed in the fire. And no party disputes that. Importantly, no language in the policy precludes application of the scheduled equipment provision when the equipment happens to be, or become, borrowed, and no provision in the policy precludes application of the scheduled equipment provision when the borrowed/rented equipment provision also applies. And further, nothing in the policy provides that the borrowed/rented provision becomes the intended sole source of coverage when an item of equipment is or becomes borrowed, regardless of whether or not the equipment is otherwise individually scheduled in the Declarations. Thus, under the policy, nothing precludes the scheduled equipment provision, and its coverage limits, from applying here. Alabama law requires that terms of an insurance contract "must be enforced as written." *Porterfield*, 856 So. 2d at 806. And as written, the policy clearly provides up to $500,000 in insurance coverage for loss to the 2016 cotton picker as an individually described item of equipment on the policy. No ambiguities exist, and no party asserts any ambiguity.

NTIC argues the cotton picker originally was insured and scheduled on the policy as owned equipment by Westover and that had Westover approached NTIC about insuring the equipment as borrowed equipment, NTIC would have conducted

underwriting and assessed the appropriate premium if NTIC was willing to insure the equipment as borrowed equipment.  But this assertion requires the Court to look behind the policy, which it need not do given the policy's clear and unambiguous language.  *See Gardner v. State Farm Mut. Auto. Ins. Co*., 822 So. 2d 1201, 1208–09 (Ala. Civ. App. 2001) (noting where the terms of the agreement are clear and unambiguous, the terms of that agreement may not be altered by parol evidence). As written, the policy provided up to $500,000 in coverage for equipment "individually described and specifically covered in the Declarations."  Again, no condition or limitation exists requiring that the individually scheduled equipment be owned, borrowed, rented, leased, or any other arrangement. The only condition was that the equipment be individually scheduled and described.  Which it was.  If NTIC wanted to limit the application of the scheduled equipment coverage to owned equipment only or to non-borrowed or non-rented equipment, NTIC certainly could have written the insurance policy in that manner. Or, it could have written the policy in a manner that precluded application of the scheduled equipment provision when the borrowed/rented equipment provision applied.  But it did neither.

For the reasons stated above, NTIC's motion for summary judgment is due to be denied and Flint and Westover's motions for summary judgment on NTIC's declaratory judgment claim are due to be granted as it concerns application of the scheduled equipment provision.  As such, the 2016 cotton picker is covered under the scheduled equipment provision (**Section I, Coverage E(A)(1)(j)**) of the policy.

### B.   Westover's Breach of Contract Claim

Westover also moves for summary judgment on its breach of contract and declaratory claims.  These claims are founded upon the same policy provisions and arguments that are made the basis of the NTIC's declaratory judgment claim.  As to its contract claim, Westover seeks no damages other than those coverage benefits to which it is entitled under the insurance policy, the actual cash value of the cotton

picker up to $500,000.  In other words, Westover seeks recovery based on what it should have received had NTIC honored its obligation under the policy. *See Clark v. Liberty Nat'l Life Ins. Co.*, 592 So. 2d 564, 567 (Ala. 1992) ("In a breach of contract action, the ordinary measure of damages is 'an amount sufficient to return the plaintiff to the position he would have occupied had the breach not occurred.'") (quoting *Aldridge v. Dolbeer*, 567 So. 2d 1267, 1269 (Ala. 1990)).  Since Westover's contract claim is really a declaratory judgment claim by another name and since Westover's declaratory judgment claim is based on the same facts and policy provisions as NTICs declaratory judgment claim, the outcome is thus the same— Westover is entitled to coverage benefits under the scheduled equipment provision (**Section I, Coverage E(A)(1)(j)**).  Since the amount of loss is undisputed and falls within the coverage limits of the policy, that amount is $483,356.00 (the actual cash value of the cotton picker), less the $10,000 already paid by NTIC, less the $10,000 applicable deductible, for a total amount owing by NTIC of $463,356.00.  (Doc. 34 at 7–8.)

As a result, Westover's summary judgment motion as to its breach of contract and declaratory judgment claim is due to be granted, and a judgment entered thereon in favor of Westover for $463,356.[4]

## CONCLUSION

1.    Plaintiff National Trust Insurance Company's Motion for Summary Judgment (Doc. 33) is DENIED.

---

[4] Flint asserts the judgment should make the insurance funds payable to Flint by virtue of an agreement between Westover and Flint.  The Court will not recognize that agreement in this opinion and the forthcoming judgment because Westover is the insured and loss payee under the NTIC policy and the private agreement between Westover and Flint concerning the disposition of those proceeds between the two can be handled separately by them.

2.      Defendant Flint Equipment Company, Inc.'s Motion for Summary Judgment (Doc. 34) is GRANTED.

3.      Defendant Westover Planting Company's Motion for Summary Judgment (Doc. 35) is GRANTED.

A separate judgment will issue.

DONE on this the 6th day of December 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE